UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES and CATHERINE BRAUN,
husband and wife, EDWARD and MURIEL
PARDON, husband and wife, and COLT
FARMS, INC.,

       Plaintiffs,                            Case No.: 05-71330

v.                                                  Hon.: Lawrence P. Zatkoff

ANN ARBOR CHARTER TOWNSHIP,

       Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on February 5, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #7). Plaintiffs have filed a response, and Defendant has filed a reply brief. The Court finds that the facts and legal arguments pertinent to Defendant's Motion for Summary Judgment are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED and Plaintiffs' cause of action is DISMISSED WITHOUT PREJUDICE.

## II. BACKGROUND

**A.     The Parties and the Underlying Property**

Plaintiffs Charles and Catherine Braun own approximately 280.5 acres of property zoned A-1 (Agricultural District) and an additional 5.5 acres zoned R-2 (Single Family Suburban Residential District). Plaintiffs Edward and Muriel Pardon own approximately 77 acres of land immediately south and west of the Braun property, and it is zoned A-1. The Braun and Pardon properties (collectively, the "Property") are located along the northern boundary of Ann Arbor Township, less than a mile from the Ann Arbor city limits and less than one-half mile from the Village of Barton Hills. The A-1 District limits permitted property uses to (1) specified agricultural activities, (2) public or quasi-public activities, and (3) single family detached residences on lots having a minimum size of 10 acres. The R-2 district allows up to one home per acre. The Brauns and Pardons have contracted to sell the Property to Plaintiff Colt Farms, Inc. ("Colt Farms").

The Brauns commercially farmed their property for approximately 75 years. The Pardons also used their property for commercial farming. In 2005, the Brauns and Pardons ceased farming operations and leased the Property to a third party for the 2005 crop year. The Pardons lost money in 2005, and the Brauns earn an amount barely sufficient to cover their costs. The tenant on the Property requested a reduced rent for 2006, which caused the Brauns and Pardons to further incur losses.

Barbara Dartt, an experienced agricultural economist, has opined that it is not economically feasible to continue agricultural operation of the Property. In addition, appraiser David C. Burgoyne opined that the Property cannot be economically developed for 30 single family lots, the maximum allowed under the existing zoning restrictions.

**B.	Plaintiffs' Rezoning Application**

On February 27, 2001, the Brauns, the Pardons and Colt Farms (collectively, the "Plaintiffs") asked Defendant to rezone approximately 215 acres of the Property to R-6 (Mobile Home Park Residential District) and the remaining 149 acres to R-3 (Single Family Home Urban Residential District). The Petition for Zoning Amendment supplied by Defendant requires specific information be included in the Petition. The Defendant's Zoning Ordinance requires the same information for a rezoning petition. The Petition for Zoning Amendment states: "THE PETITIONER WILL NOT GO BEFORE THE PLANNING COMMISSION UNTIL ALL OF THE AFOREMENTIONED INFORMATION [IS] PROVIDED." Similarly, §25.03(B) of the Defendant's Zoning Ordinance states: "The Planning Commission shall establish a date of a public hearing on the petition after confirming that the petitioner has provided all information and paid all fees required by this Ordinance."

On April 2, 2001, Defendant notified the Plaintiffs that their Petition for Rezoning would be considered at a public hearing. The public hearing on Plaintiffs' Petition was commenced before the Defendant's Planning Commission ("Planning Commission") on May 24, 2001. A second full hearing to consider Plaintiffs' application was held before the Planning Commission on July 9, 2001. The Planning Commission then sent Plaintiffs a request with a list of a "host of specific information" the Planning Commission still "need[ed] to know." Plaintiffs notified the Defendant that Plaintiffs had submitted all information required by the Defendant's Zoning Ordinance. Plaintiffs indicated that they believed that the Defendant was treating Plaintiffs differently than other applicants. The Planning Commission held a third public hearing on the Plaintiffs' Petition on August 6, 2001, at which time it voted to recommend a denial of Plaintiffs' Petition. On September 14, 2001, the

Washtenaw County Metropolitan Planning Commission also voted to recommend denial of Plaintiffs' Petition. On October 15, 2001, the Defendant's Board of Trustees adopted a resolution denying the Plaintiffs' Petition for Rezoning.

Following the Defendant's action, Plaintiffs asked the Defendant whether there was any possibility of a variance from the Zoning Board of Appeals ("ZBA"). In an October 29, 2001, letter, the Defendant responded that the ZBA "does not have jurisdiction to alter or change a Zoning District Classification of any property, grant a use variance, or hear any other appeal from the Township Board." This advice was based on Defendant's interpretation of Section 24.04 of the Defendant's Zoning Ordinance, which provides: "The Board of Appeals shall not alter or change the zoning district classification of any property, or make any change to the terms of this ordinance, and shall not take any action that would result in making a legislative change."

**C.    State Court Proceedings and Defendant's Denial of Use Variance**

On February 1, 2002, Plaintiffs brought suit in state court challenging the constitutionality of the A-1 and R-2 district zoning restrictions as such restrictions applied to their properties. The issue of Plaintiffs' state law takings claim was briefed in the trial court before the trial court dismissed Plaintiffs' Complaint. Plaintiffs appealed to the Michigan Court of Appeals. On May 20, 2004, the Michigan Court of Appeals dismissed Plaintiffs' case for failure to exhaust administrative procedures. The Michigan Court of Appeals held that Plaintiffs must seek and be denied a use variance from the ZBA before their claims would be ripe for judicial review. *See Braun v. Ann Arbor Twp.*, 262 Mich.App. 154 (2004). The Michigan Court of Appeals did not address the merits of Plaintiffs' state law takings claim or determine whether Plaintiffs were entitled to compensation. Plaintiffs then sought leave to appeal to the Michigan Supreme Court, but leave was denied.

On July 21, 2004, Plaintiffs sought a use variance from the ZBA. The ZBA denied Plaintiffs' request after determining that it lacked jurisdiction to grant such a use variance.

**D.     Plaintiffs' Instant Cause of Action**

In 2005, Plaintiffs filed a Complaint in this Court that asserted the following claims: (1) deprivation of procedural due process; (2) deprivation of substantive due process; (3) violation of the Plaintiffs' equal protection rights; (4) violation of the takings clause of the U.S. Constitution; and (5) a violation of 42 U.S.C. §1983.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met

5

its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

**A.     Takings Claim**

The Court first addresses Plaintiffs' federal takings claim. An inverse condemnation (*i.e.,* a takings) claim is established when the Government takes property through regulation without just compensation. *See* U.S. Const. amend. V; *Agins v. Tiburon*, 447 U.S. 255 (1980). Pursuant to the current and binding law of the U.S. Supreme Court, in order to bring a federal takings claim in federal court, a plaintiff must have (1) a final administrative decision constituting a taking, and (2) attempted to seek compensation through the procedures the State has provided for doing so. *See Williamson County v. Hamilton Bank*, 473 U.S. 172, 186-97 (1985).[1] The parties agree that Michigan provides an adequate "just compensation" procedure. *See, e.g., Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) ("In Michigan, the doctrine of inverse condemnation is long recognized and constitutionally established").

---

[1] The Court notes Plaintiffs offer for the Court to heed the proposal of then-Chief Justice Rehnquist to revisit *Williamson*'s ripeness requirements. *See San Remo Hotel v. San Francisco, Ca.*, 545 U.S. 323, 348-52 (2005) (Rehnquist, C.J., concurring). The Court is bound by existing Supreme Court precedent, however, and Plaintiffs' well-crafted argument will have to wait to be heard another day, by a higher court.

*1.     Plaintiffs Received a "Final" Administrative Decision*

The Supreme Court, Sixth Circuit and Michigan courts have clearly stated that finality is achieved when a landowner seeks and is denied a use variance. The seminal case is *Williamson*, wherein the county planning commission denied a developer's proposed plat, and the developer sued the county under a federal takings claim pursuant to 42 U.S.C. §1983. The Supreme Court ruled that the developer's takings claim was not ripe because it "failed to seek variances from either the Board[,] the Commission . . . [or the] Board of Zoning Appeals [which] had the power to grant certain variances." *Williamson*, 473 U.S. at 188. The *Williamson* Court further stated that seeking available variances is the final step to ripen a federal takings claim:

> [R]esort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed.

*Id.* at 193. *See also Sequin v. Oliveto*, 968 F.2d 584, 587 (6th Cir. 1992)("[A] zoning determination cannot be deemed final until the plaintiffs have applied for, and been denied, a variance."); *Paragon Prop. Co. v. Novi*, 452 Mich. 568, 577-80 (1996) (adopting *Williamson's* variance requirement and holding that a zoning decision was not final only because plaintiff had not made a "request for variance").

In other words, in order to satisfy the first prong of *Williamson,* a plaintiff must have received a "final" administrative decision before initiating a federal takings claim in federal court. Here, Defendant's Board of Trustees denied Plaintiff's rezoning request after three hearings, and the ZBA formally denied Plaintiffs' application for a use variance on October 29, 2001, after the Michigan courts directed Plaintiffs to do so. The Court's review of the record in this case reveals that Defendant affords zoning applicants no other administrative avenues for obtaining relief.

Therefore, Plaintiffs have exhausted their avenues for obtaining a use variance. Accordingly, the Court concludes that Defendant has made a final administrative decision with respect to Plaintiffs' Petition to have the Property rezoned.

Defendant's reliance on *MacDonald v. County of Yolo*, 477 U.S. 340 (1986), is misplaced. In *MacDonald*, the Supreme Court stated that "[o]ur cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." *MacDonald*, 477 U.S. at 351. This case is distinguishable, however, as Defendant admitted in the state court that Plaintiffs are not required to apply for every conceivable permitted use or zoning classification for the property. In fact, Michigan law forbids such an onerous and unfair burden. *See, e.g., Oceo Land Co. v. Dept. Nat. Res.*, 216 Mich.App. 310, 315 (1996) ("We decline to hold that a trial court deciding a regulatory taking claim must dismiss the claim as not ripe unless the property owner has actually taken steps to obtain all necessary permits to proceed with alternate uses, even if it has no intention of adopting any of those alternative uses.").

The Court also rejects Defendant's contention that this Court should ignore the Michigan Court of Appeals' order for Plaintiff to make an appeal to the ZBA. Defendant suggests that this Court should direct Plaintiffs back to the Planning Commission to restart the process. This Court believes that such a directive would require Plaintiffs "to persist with [a] protracted application process to meet the final decision requirement [and] would implicate concerns about disjointed, repetitive, and unfair procedures expressed in *MacDonald, 477 U.S. at 350 n.7.*" *Del Monte Dunes v. Monterey*, 920 F.2d 1496, 1506 (9th Cir. 1990). This is particularly true here, where Plaintiffs actually took the steps to seek a variance from the ZBA (even though such a request was futile

according to the ZBA itself) and such variance has already been denied.

*2.     Plaintiffs' Federal Takings Claim is Not Ripe For Review*

Defendant argues that Plaintiffs must go back to state court again because the Michigan Court of Appeals (and therefore the Michigan Supreme Court) did not rule on Plaintiffs' takings claim and deny Plaintiffs' demand for compensation. *Williamson*, 473 U.S. at 195. As noted above, the Michigan Court of Appeals dismissed Plaintiffs' cause of action for failure to exhaust administrative remedies (*i.e.*, it held that Plaintiffs must petition the ZBA for a variance in order to achieve finality sufficient to ripen their constitutional claims in the Michigan courts). *See Braun*, 262 Mich.App. at 160. The Michigan Court of Appeals did not address the takings clause or the right to compensation.

Plaintiffs argue that their claim is ripe. Plaintiffs that their state law takings claim was briefed in the Washtenaw County Circuit Court, the Michigan Court of Appeals and the Michigan Supreme Court. As such, Plaintiffs assert that they exhausted their state judicial remedies in going through the Michigan courts. *Relying on Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) (plaintiffs "***must have attempted*** to obtain compensation through established state procedures") (emphasis added); *Bigelow v. Michigan Dept. of Nat. Resources*, 970 F.2d 154, 158 (6th Cir. 1992) ("plaintiffs have not pursued an inverse condemnation remedy in the Michigan courts . . ."); *Fair v. Peters*, 427 F.3d 1035, 1038 (6th Cir. 2005) ("[plaintiff] ***must . . . investigate*** the possible state procedures for compensation for her alleged taking in order for her claim to be ripe") (emphasis added).

The Court notes, however, that unlike the instant case, the plaintiffs in *Macene, Bigelow* and *Peters* never filed a takings claim (of any nature) in state court before filing their actions in federal

9

court. As such, the language of the courts in those cases is not overly helpful to Plaintiffs' argument, and certainly not binding, in the matter before this Court. It is not clear to this Court that the Sixth Circuit was saying that a plaintiff need only investigate (which does not even require filing an action) the possible state procedures for compensation in order to have a ripe federal takings claim. To the contrary, it would appear that, at a minimum, the earlier filing of a state law takings claim is necessary. *See, e.g., Bigelow*, 970 F.2d at 158 (*quoting Mancene*, 951 F.2d at 704) ("the plaintiffs have not pursued an inverse condemnation remedy in the Michigan courts, although such a remedy could be recognized in this case. . . . Since [the plaintiff] has not attempted to use Michigan's inverse condemnation procedure . . . his claim of taking without just compensation . . . is not ripe for review").

Plaintiffs argue that the court in *DLX v. Commonwealth of Kentucky*, 381 F.3d 511 (6th Cir. 2004), rejected a state's contention that a plaintiff must return to state court even though the state court had not addressed the merits of the constitutional claims at issue in that case. In *DLX*, the plaintiff was denied a mining permit at several agency levels in Kentucky, including ultimately being denied the permit by the Secretary of the Kentucky Natural Resources and Environmental Protection Cabinet ("Secretary"). Kentucky law allowed a permit applicant to seek judicial review of a Secretary's final Order, and plaintiff immediately filed a state court takings claim, asserting that the denial of a permit constituted a regulatory taking. The trial court dismissed the case for a lack of ripeness, and an appeals court reversed that decision. The Kentucky Supreme Court then decided the case on the basis of failure to exhaust administrative remedies, rather than ripeness. The Kentucky Supreme Court ruled that because plaintiff had not appealed the Secretary's final order before filing a takings claim, the plaintiff could not proceed on its state constitutional takings claim.

In light of the foregoing facts, the *DLX* court ruled:

> But DLX has been denied just compensation in a state suit; it sought compensation and none was awarded. That the decision was not "on the merits" in the strictest sense does not mitigate DLX's injury; its property has allegedly been taken through the denial of its permit application, and **an attempt to remedy that injury in the state court has been defeated by a rule of state law. DLX has no more remedy to seek in state court; the time for application of review of the Cabinet's decision is long past, and any state-court action it files will be dismissed for want of exhaustion. DLX has been denied a federal right through the operation of a state procedural rule without analogue in federal law, and its complaint is ripe.**

*DLX*, 381 F.2d at 519 (emphasis added).

Plaintiffs overlook a critical difference between the *DLX* case and the instant case. Unlike the plaintiffs in *DLX*, who were barred from further action in state court and therefore were precluded from the ability to be compensated under state law, Plaintiffs in this matter are not barred from seeking compensation in state court. Although the state courts did not address Plaintiffs' entitlement to compensation in the past, that remedy is still available to Plaintiffs. As Plaintiffs have recognized, and as the *DLX* court noted, the *Williamson* Court was concerned with ripeness, which the *Williamson* Court defined as "ensuring that an injury has actually occurred." *DLX*, 381 F.3d at 519.

In this case, Plaintiffs have not yet suffered an injury as they have not been denied just compensation in state court. Although the state court dismissed Plaintiffs' initial filing because Plaintiffs had not completed the necessary administrative procedures, there is nothing to preclude Plaintiffs from pursuing their takings claim in state court now that they have completed the necessary administrative procedures. As such, Plaintiffs are not in a situation where they have "been denied a federal right through the operation of a state procedural rule." *DLX*, 381 F.3d at 519.

Significantly, the Sixth Circuit has revisited this issue since *DLX*. In *Peters*, 427 F.3d at 1037 (quoting *Williamson*, 473 U.S. at 194) (emphasis added), the Sixth Circuit stated:

> [I]f the state has made available some "reasonable, certain and adequate provision for obtaining compensation," then the claim is not ripe until the claimant has attempted to use this "adequate procedure" **and has been rebuffed**.

In this case, Plaintiffs have not been rebuffed in their attempt to obtain compensation. To the contrary, Plaintiffs' attempt to obtain compensation essentially was "adjourned" until the necessary administrative procedures were completed. Upon refiling their case in state court, the issue of obtaining compensation under a state law takings claim can be decided. If the state courts determine that Plaintiffs are not entitled to just compensation (whether on the merits or because a state rule precludes such recovery), Plaintiff's federal takings claim then will be ripe for consideration by this Court. At this time, however, the Court concludes that Plaintiffs have not satisfied its procedural obligations pursuant to the second prong of *Williamson*.

Accordingly, for the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' federal takings claim and that claim is therefore DISMISSED WITHOUT PREJUDICE.

**B.     Plaintiffs' Remaining Claims**

Defendant also moves the Court to dismiss the remaining claims filed by Plaintiff (*i.e.*, the procedural and substantive due process claims, an equal protection claim and a §1983 claim). Plaintiff argues that the Sixth Circuit has recognized that there are cases where the *Williamson* requirements have not been applied in a zoning case. *See, e.g., Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215 (6th Cir. 1992) ("the very existence of an allegedly unlawful zoning action, without

more, makes a substantive due process claim ripe for federal adjudication"); *Nasierwoski v. Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) ("a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency"); *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989) ("if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required").  In reviewing the cases cited by Plaintiffs, however, the Court notes that none of them involved a plaintiff alleging a federal takings claim.

In cases where a federal takings claim is asserted (and relief from such takings is sought), the Sixth Circuit consistently has held that "claims for violations of substantive due process and procedural due process claims ancillary to a takings claim are also subject to [the *Williamson*] ripeness requirement." *Peters*, 427 F.3d at 1037 (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)). *See also, Bigelow*, 970 F.2d at 160:

> Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts.  Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply be attaching a procedural due process claim to their complaint. . . . the plaintiffs' procedural due process claim is not ripe, and thus cannot be heard by this court.

For the same reasons, Plaintiffs' §1983 claim and equal protection claim must be dismissed as unripe. *See Peters*, 427 F.3d at 1038 (§1983 claim); and *Bigelow*, 970 F.2d at 158-59 (equal protection claim).

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED with respect to all of the non-takings claims asserted by Plaintiffs.  As the basis for granting

summary judgment on those claims is that they unripe, all such claims are DISMISSED WITHOUT PREJUDICE.

## V.  CONCLUSION

Accordingly, and for the reasons above, Defendants' Motion for Summary Judgment is GRANTED.  Plaintiffs' cause of action shall be DISMISSED WITHOUT PREJUDICE, and Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff  
LAWRENCE P. ZATKOFF  
UNITED STATES DISTRICT JUDGE

S:\Jim Carroll\SJ\braun.01.30.07.wpd